**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Steven Ball,

    Plaintiff,

v.

Mary Jo Robinson,

    Defendant.

Case No. _____

Hon. _____

HOWARD & HOWARD ATTORNEYS PLLC
Michael O. Fawaz (P68793)
Attorneys for Plaintiff
450 W. Fourth Street
Royal Oak, MI 48067
(248) 645-1483
mfawaz@howardandhoward.com

**COMPLAINT
AND JURY DEMAND**

    Plaintiff, Steven Ball, by and through his counsel, Michael O. Fawaz of Howard & Howard Attorneys PLLC, hereby submits the following as his Complaint for Damages:

**The Parties**

1. Plaintiff Steven Ball is a citizen of the State of Florida.

2. Defendant Mary Jo Robinson is a citizen of the State of Michigan, residing in Rapid City, County of Kalkaska.

3. Plaintiff and Defendant are siblings.

**Jurisdiction and Venue**

4. Plaintiff and Defendant are citizens of different states.

1

5. Through the various claims, including claims seeking damages for defamation, injurious falsehood, tortious interference, breach of contract, and intentional infliction of emotional distress, the economic and non-economic damages sought exceed the sum of $75,000.

6. Defendant took the actions complained of herein within this judicial district and Plaintiff suffered harm within this judicial district.

## Background and Facts

7. Plaintiff is a trained musician working professionally as a performing artist, music director, conductor, composer and consultant in the service of churches, universities and other institutions both nationwide and abroad.

8. Defendant has known Plaintiff's sexual orientation for over 25 years.

9. Since learning of Plaintiff's sexual orientation, Defendant has viciously targeted Plaintiff over a period of many years.

10. Defendant is a bigot towards homosexual people.

11. While the parties' parents were alive, Defendant told their parents that Plaintiff made "a selfish option of a lifestyle."

12. In March 2015, Defendant told Plaintiff he needed to go "pick up [Mom's] pain meds after this too. Cancel your gay pride performances!!!!"

13. March does not typically have gay pride performances, and Plaintiff has never appeared as an artist performing at any gay pride event.

14. In March 2015, Defendant told Plaintiff he is a "selfish selfish greedy gay ass."

15. In March 2015, Defendant told Plaintiff she did not desire to be in touch "with a liar who claims he is celibate and continues to have sexual relations with other men. This is not a

disease.  This is a selfish chosen behavior….i know the selfish and sick butthole satisfaction you continue to partake in."

16. In March 2015, Defendant referred to Plaintiff as "princess."

17. In or about 2016/2017, Defendant learned that Marsha Ball, the parties' mother, had amended her trust, naming Plaintiff as the Trustee.

18. Defendant was angered by the change her mother had made to her trust.

19. Defendant petitioned Adult Protective Services and law enforcement while Marsha was alive to take action against Plaintiff.

20. Defendant's allegations being contrived and false, neither Adult Protective Services nor law enforcement took any action against Plaintiff.

21. Defendant brought action seeking to invalidate the amendments to Marsha's trust.

22. Defendant's action to invalidate the amendments to the trust were unsuccessful.

23. Ultimately, the parties entered into a Settlement Agreement and Mutual Release. (**Ex. 1**).

24. Under the Settlement Agreement, Defendant received a one-time payment of $22,000 and various personal items.  *Id.* at ¶¶ 1-2.

25. The Settlement Agreement mandated the following:

> **Agreement Not to Enter Land**.  Mary Jo permanently agrees not to enter upon the Farm and/or the Cottage. Mary Jo permanently agrees not to enter upon any future residential, work, or business address of Steven disclosed by Steven to Mary Jo. Steven permanently agrees not to enter upon Mary Jo's current residence, located at 9370 Torch Bridge Court Rapid City, Michigan, her current work addresses, located at GVSU, 2200 Dendrinos Drive, Traverse City, Michigan, and GVSU, Cook-DeVos Center for Health Sciences, 301 Michigan Street NE, Grand Rapids, Michigan, or any future residential, work, or business address of Mary Jo disclosed by Mary Jo to Steven.

*Id.* at ¶ 6.

26. Defendant violated the above provision and illegally entered Plaintiff's property uninvited.

27. The Settlement Agreement mandated the following:

> **Agreement Not to Contact Employers**. Each Party agrees to permanently refrain from contacting and/or communicating with any current, past and/or prospective employer of the other Party.

*Id.* at ¶ 7.

28. As set forth in detail below, Defendant violated the above provision and contacted current and prospective employers of Plaintiff.

29. Following the Defendant's unsuccessful Trust Contest, she continued her vendetta against Plaintiff.

## **Defendant's Threats, Lies, and Employment Interference**

30. On April 16, 2020, Defendant parked her car at a neighbor's home, crossed the neighbor's property, and surreptitiously entered Plaintiff's home, uninvited.

31. Defendant cursed, screamed, and verbally threatened Plaintiff over a 45-minute period, which was recorded.

32. Defendant forcefully took personal items of Plaintiff from the home.

33. Plaintiff called 911 and reported the incident and made a police report. (**Ex. 2,** Police Report).

34. Plaintiff reported that Defendant informed him if he called the police, "well I'll just tell them you assaulted me then." *Id.*

35. Defendant was interviewed by the responding officer, lied to him repeatedly, and was told she could be charged for lying in a criminal investigation.

36. At that time, Plaintiff was gainfully employed with the St. Francis de Sales Oratory in St. Louis, MO.

4

37. The very next morning, fearing Defendant's erratic and unhinged behavior, Plaintiff left Michigan and returned to St. Louis.

38. Nearly a week later, on April 21, 2020, Defendant, based on fabrications and lies, obtained an *ex parte* personal protection order ("PPO) against Plaintiff from the Kalkaska County Circuit Court.

39. Defendant had the PPO served on Plaintiff at his employment in St. Louis, MO on May 4, 2020.

40. Upon the parties making a single court appearance regarding the PPO and Plaintiff presenting the Court with evidence, including the police report, statements, and recordings of the incident on April 16, 2020, the PPO was dissolved on the spot.

41. Defendant had no evidence to support anything she had previously stated to obtain the PPO under false pretenses.

42. The Kalkaska County judge warned Defendant of her improper behavior and even noted that Defendant was in violation of the Settlement Agreement entered into between Plaintiff and Defendant.

43. On May 8, 2020, days after having the PPO served, Defendant texted Plaintiff.

44. Her opening text was "NOT done with you yet for all you stole and lied about! Happy Mothers Day [sic] to the bastard of a sibling. You'll get yours! Hold on. It's going to be a rough ride. Like mom said… 'I will be your ghost.'"

45. Thereafter, texts indicated that Defendant had contacted "Cogshall" [sic].

46. "Cogshall" referred to Rev. Benjamin Coggeshall, the priest running the church where Plaintiff was employed in St. Louis.

47. Defendant contacted Plaintiff's employer in St. Louis at least three times between April 21, 2020 and May 4, 2020.

48. On May 14, 2020, Defendant continued her threatening texts.

49. She informed Plaintiff "I will haunt you for the rest of your life for what you did against myself and the family…."

50. Later, Defendant texted Plaintiff "Don't worry you will get yours."

51. In contacting Plaintiff's employer in St. Louis, Defendant relayed information from the fraudulently obtained PPO, spread vile lies about Plaintiff, fabricated events, and accused him of being a thief and committing illegal activities.

52. On July 15, 2020, after multiple calls by Defendant to Plaintiff's employer, Benjamin Coggeshall, the priest in charge of the St. Francis de Sales Oratory church in St. Louis, terminated Plaintiff's employment without explanation or cause.

53. In late March/early April 2023, Plaintiff was offered a position as interim Director of Music with the Sacred Heart Church in Elk Rapids, MI.

54. In early April, Plaintiff was informed that his position was provisional because the church needed to investigate vicious allegations made by Defendant.

55. Specifically, upon learning that the Sacred Heart church was hiring Plaintiff, Defendant began to sharpen her trident and concoct her web of lies.

56. In early April, texts were sent to Sacred Heart Church from the telephone number 231-676-3428.  (**Ex. 3**).

57. The aforementioned telephone number is Defendant's cellular telephone number since at least 2015.

58. The texts were responded to by the parish secretary.

59. The first message began with Defendant claiming that her aunt will not be attending Palm Sunday out of fear of her brother (the Plaintiff).

60. The aunt in reference is one Defendant unilaterally had declared as mentally incompetent in or around 2017, over whom she made herself guardian, and over whom she now exerts total control.

61. On or about April 3, 2023, Defendant texted the Sacred Heart Church claiming her aunt is devastated.

62. Additionally, Defendant stated:

"Fr Z asked the congregation to give my brother!  A pedifile! [sic] Bisexual! Molester a STANDING OVATION!!!  And they did!!!! . . . Not sure if you were there but several of my neighbors were…who know the ENTIRE HISTORY I told you in confidence.  They told me Fr Z stated he was 'in tears… so happy Steven Ball was…playing at the services!"  Did ANYTHING I said Even [sic] get to the priest?????!!!?? . . . Btw.  If a parishes [sic] ever went thru what I described you would at least expect a phone call from the priest.  Maybe? An invite to discuss.  Not even a letter.  You and only My aunt know what happened.  And nothing."

(**Ex. 3,** Emphasis, improper grammar, and misspellings in original).

63. Thereafter, Defendant continued: "STANDING OVATIONto [sic] a bisexual? Pedafile? [sic] Who molested his sister? Stole from My aunt who is mentally impaired…." *Id.*

64. Defendant claimed her aunt was terrified the Plaintiff would find her, that she tried to call the church, but no one answered, and she did not leave a message. *Id.*

65. Each and every one of the statements Defendant made to the church was a vile lie.

66. Plaintiff is not and has never been a pedophile.

67. Plaintiff did not and has never molested his sister.

68. Plaintiff did not and has never stolen from his aunt.

69. Plaintiff is not and has never been a bisexual.

7

70. In making her false statements, Defendant not only published the lies to the parish administrator, but specifically made clear she wanted the lies shared with the parish priest, who had control over Plaintiff's employment.

71. Defendant repeatedly stated she wanted dialogue specifically with the parish priest.

72. Defendant's conduct with the Sacred Heart Church has become her *modus operandi*, having taken the same steps with Plaintiff's employment in St. Louis and others.

## Count I – Defamation/Defamation *per se*

73. Plaintiff restates and adopts the preceding paragraphs as if fully set forth herein.

74. Defendant made specific statements that Plaintiff is bisexual, a pedophile, a molester, and a thief.

75. Each of Defendant's statements is a fabricated lie.

76. Defendant published the above statements to at least the secretary and administration of Sacred Heart Church, her aunt, and sought to have the statements further disseminated.

77. In making the statements, Defendant knew they were false when made.

78. As set forth above, Defendant made the statements with actual malice, seeking to harm the Plaintiff whom she had been threatening for years.

79. In imputing Plaintiff's chastity and accusing him of committing crimes, Defendant's statements amount to defamation *per se*.

80. Plaintiff had his compensation withheld in April due to Defendant's false statements.

81. Plaintiff has had his reputation harmed in the community due to Defendant's contemptuous behavior.

82. Plaintiff is entitled to damages, including attorneys' fees and costs.

## Count II – Injurious Falsehood

83. Plaintiff restates and adopts the preceding paragraphs as if fully set forth herein.

84. Defendant made specific statements that Plaintiff is bisexual, a pedophile, a molester, and a thief.

85. Each of Defendant's statements is a fabricated lie.

86. Defendant published the above statements to at least the secretary and administration of Sacred Heart Church, her aunt, and sought to have the statements further disseminated.

87. In making the statements, Defendant knew they were false when made.

88. As set forth above, Defendant made the statements with the specific intent of harming the Plaintiff, whom she had been threatening for years.

89. In making the statements, Defendant knew that she would harm Plaintiff's pecuniary interests, specifically his employment with the Sacred Heart Church.

90. Defendant intended to cause the Sacred Heart Church not to hire Plaintiff or to terminate his employment, thus causing him pecuniary harm.

91. Defendant's actions actually caused Plaintiff to suffer pecuniary harm when the Sacred Heart Church withheld Plaintiff's pay in order to investigate Defendant's false statements.

## Count III –Interference with Business Expectancy/Prospective Economic Advantage

92. Plaintiff restates and adopts the preceding paragraphs as if fully set forth herein.

93. In April/May 2020, Plaintiff was gainfully employed with the St. Francis de Sales Oratory in St. Louis, MO as the Director of Sacred Music.

94. Defendant knew that Plaintiff was employed by the St. Francis de Sales Oratory in St. Louis, MO.

95. In April 2020, based on false and fraudulent information, Defendant obtained a PPO against Plaintiff and had him served in May 2020 at his place of employment.

96. Defendant contacted the priest overseeing Plaintiff's employment, relaying the false information from the PPO.

97. Defendant had multiple conversations with Plaintiff's employer in St. Louis, sharing vile lies.

98. Upon information and belief, Defendant spread additional lies to Plaintiff's employer, including but not limiting to accusing him of being a thief, claiming fear of him, and accusing him of other illegal activities.

99. Defendant contacted Plaintiff's employer specifically to interfere with his business expectancy and prospective economic advantage.

100. Defendant knew that in sharing false information from the PPO and spreading other lies, she would actually harm Plaintiff's business expectancy and prospective economic advantage.

101. Defendant took the above actions knowing they were false and did so with actual malice.

102. As a result of Defendant's malicious interference, Plaintiff was terminated from his employment with the St. Francis de Sales Oratory.

103. As a result of Defendant's malicious interference, Plaintiff suffered damages exceeding $200,000.

**Count IV – Breach of Settlement Agreement Contract**

104. Plaintiff restates and adopts the preceding paragraphs as if fully set forth herein.

105. In June 2021, Plaintiff and Defendant entered into the Settlement Agreement and Mutual Release. (**Ex. 1**).

106. The Settlement Agreement was a binding contract.

107. Plaintiff entered into the Settlement Agreement "individually, as personal representative of the estate of Marsha A. Ball, deceased, and as successor trustee of the Marsha A. Ball Trust." *Id.*

108. The Settlement Agreement conferred rights and obligations on Plaintiff and Defendant individually, independent of the specific Trust Contest initiated by Defendant.

109. Paragraph 6 of the Settlement Agreement expressly barred Defendant "permanently" from entering "upon the Farm and/or the Cottage. Mary Jo permanently agrees not to enter upon any future residential, work, or business address of Steven disclosed by Steven to Mary Jo." (**Ex. 1**, ¶ 6).

110. Paragraph 7 of the Settlement Agreement required the parties "permanently refrain from contacting and/or communicating with any current, past, and/or prospective employer of the other Party." (**Ex. 1**, ¶ 7).

111. On April 16, 2020, Defendant illegally entered Plaintiff's home, without permission and uninvited.

112. Defendant's illegal entry into Plaintiff's private residence violated paragraph 6 of the Settlement Agreement.

113. In April 2020-May 2020, Defendant contacted Plaintiff's employer, the St. Francis de Sales Oratory in St. Louis.

114. Defendant contacted Plaintiff's St. Louis employer on at least three occasions, specifically seeking to speak to the priest who oversaw Plaintiff's employment, wherein she spread false and malicious lies regarding Plaintiff.

115. In April 2023, Defendant contacted the Sacred Heart Church in Elk Rapids, MI on multiple occasions, knowing it was Plaintiff's employer.

116. Defendant specifically made false and derogatory statements to Plaintiff's employer and specifically sought meetings with the priest who decided Plaintiff's employment.

117. Defendant's contact of Plaintiff's employers violated paragraph 7 of the Settlement Agreement.

118. Defendant's actions herein were a breach of the Settlement Agreement.

119. Defendant's breach of the Settlement Agreement harmed Plaintiff individually.

120. As a result of Defendant's breaches of contract, Plaintiff has suffered damages including but to not limited to loss of employment and housing exceeding $200,000, moving expenses and related damages exceeding $50,000, and other incidental and consequential damages.

## Count V – Intentional Infliction of Emotional Distress

121. Plaintiff restates and adopts the preceding paragraphs as if fully set forth herein.

122. Over a ten-year history set forth above, Defendant has made inflammatory, homophobic, bigoted, and vitriolic statements to Plaintiff.

123. Defendant has threatened Plaintiff with assault, has threatened his employment, and has threatened his reputation.

124. In April 2020, under false pretenses, Defendant obtained a PPO against Plaintiff on an *ex parte* basis.

125. Defendant used the false report to contact Plaintiff's employer, malign him, and make vile and untrue accusations against him, resulting in his loss of employment in July 2020.

126. In April of 2023, Defendant contacted Plaintiff's employer and made vicious, untrue statements to Plaintiff's employer.

127. Defendant has falsely accused Plaintiff of being a pedophile, a molester, a thief, and a bisexual.

128. Defendant's pattern of behavior as outlined above is extreme and outrageous.

129. Defendant's actions as outlined above were done with actual intent to cause Plaintiff harm, or at minimum, done with reckless disregard.

130. Defendant's actions have caused Plaintiff anxiety, depression, fear, stress, and severe emotional distress.

WHEREFORE, Plaintiff respectfully prays for judgment in his favor and against Defendant for economic damages in excess of $200,000, non-economic damages, prejudgment interest, post-judgment interest, and attorneys' fees and related costs.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ *Michael O. Fawaz*
    Michael O. Fawaz (P68793)
    450 West Fourth Street
    Royal Oak, Michigan 48067
    248-645-1483
    mfawaz@howardandhoward.com

Dated: June 23, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Steven Ball,

    Plaintiff,

v.

Mary Jo Robinson,

    Defendant.

Case No. _____

Hon. _____

---

HOWARD & HOWARD ATTORNEYS PLLC
Michael O. Fawaz (P68793)
Attorneys for Plaintiff
450 W. Fourth Street
Royal Oak, MI 48067
(248) 645-1483
mfawaz@howardandhoward.com

---

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff with the filing of his Complaint, hereby demands a trial by jury on all issues so triable.

    Respectfully submitted,

    HOWARD & HOWARD ATTORNEYS PLLC

    By: /s/ *Michael O. Fawaz*
        Michael O. Fawaz (P68793)
        450 West Fourth Street
        Royal Oak, Michigan 48067
        248-645-1483

Dated: June 23, 2023        mfawaz@howardandhoward.com