UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN BALL,

        Plaintiff,                                      Hon. Jane M. Beckering

v.                                                       Case No. 1:23-cv-649

MARY JO ROBINSON,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

      This matter is before me on Plaintiff Steven Ball's Motion for Entry of Default Judgment. (ECF No. 46.) Defendant has responded (ECF No. 49), and Plaintiff has replied. (ECF No. 51.) On April 23, 2024, I held an evidentiary hearing regarding the motion, during which I received testimony and additional exhibits. Defendant was permitted an opportunity to cross-examine Plaintiff. At the conclusion of the hearing, I took the matter under advisement and allowed the parties an opportunity to file supplemental briefs, which they have now done. (ECF Nos. 56 and 57.) Pursuant to 28 U.S.C. § 636(b)(1)(A), I recommend that the Court **grant** Plaintiff's motion and enter a default judgment against Defendant in the amount of $216,723.99 as set forth below.

**I. Background**

      Plaintiff filed this action against Defendant, his sister, on June 23, 2023, invoking this Court's diversity jurisdiction by alleging state-law claims of: (1) defamation/defamation *per se*; (2) injurious falsehood; (3) interference with business expectancy/prospective economic advantage; (4) breach of settlement agreement; and (5) intentional infliction of emotional distress. Defendant answered the complaint, through counsel, on July 18, 2023. (ECF No. 6.) On

September 5, 2023, Plaintiff filed a first amended complaint. (ECF No. 20.) On September 15, 2023, the Court granted Defendant's counsel's motion to withdraw. The Court gave Defendant until October 3, 2023, to either secure new counsel and have new counsel file an appearance or to notify the Court that she was proceeding pro se. The Court further notified Plaintiff that she had until October 23, 2023, to answer or otherwise respond to the first amended complaint. (ECF No. 25.)

On October 4, 2023, Plaintiff applied for entry of default. (ECF No. 30.) The same day, the Court granted Defendant an extension of time to October 31, 2023, to secure new counsel or file a notice indicating her intent to proceed pro se and denied Plaintiff's application for entry of default without prejudice. The Court also warned Defendant that she had until October 31, 2023, to answer or otherwise respond to the first amended complaint. (ECF No. 31.) Plaintiff again applied for entry of default on November 1, 2023, after Defendant failed to respond to Plaintiff's first amended complaint. (ECF No. 34.) The Clerk entered a default on November 2, 2023. (ECF 35.) On November 13, 2023, Defendant filed a motion to set aside the entry of default. (ECF No. 37.) The Court denied the motion on December 20, 2023. (ECF No. 41.) Plaintiff filed the instant motion for default judgment on February 26, 2024.

## II.  Motion Standard

It is well established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993). Accordingly, by her default, Defendant has admitted all of the alleged facts necessary to establish her liability. Fed. R. Civ. P. 55(b)(2). However, the amount

2

of damages must still be proved, either by testimony of the plaintiff at a hearing or through an affidavit from the plaintiff. *Antoine*, 66 F.3d at 110–11.

### III.  Damages

Defendant devotes a substantial portion of her supplemental brief to discussing Plaintiff's conduct prior to the deaths of their parents, painting him as a selfish and uncaring individual who took advantage of his elderly parents and manipulated them to deprive her of her fair share of their inheritance. (ECF No. 57 at PageID.611–15.) She also addresses her motives for her actions: "The Defendant was not angry at the Plaintiff choosing homosexuality, she was upset with the Plaintiff using parents for financial gain and always deceitfully weaving ways to gain more wealth and monetary possessions." (*Id.* at PageID.612.) As noted above, however, because Defendant has admitted to all the facts establishing her liability on Plaintiff's claims through her default, the only issue of concern here is Plaintiff's damages, costs, and the appropriate rates of interest.

A.   **Economic Damages**

Plaintiff seeks economic damages arising from his breach of contract, tortious interference, and defamation claims. First, Plaintiff seeks damages resulting from Defendant's interference with his employment at St. Francis de Sales Oratory in St. Louis, Missouri, in the total amount of $37,166.65. This amount consists of $22,916.65 in lost wages and $14,250.00 for the value of an apartment he was provided as part of that job. (ECF No. 47 at PageID.388–89.)

At the hearing, I inquired about the information Plaintiff had used to calculate his damages relating to the loss of the apartment that St. Francis had provided as part of his compensation. Plaintiff indicated that he determined these damages by looking to publicly available information for the average cost of a similar-sized apartment in a similar neighborhood in the St. Louis area. In his supplemental brief, Plaintiff provides an alternate measure of

3

damages. He notes that in March 2021, he found part-time work in Tampa, Florida, where he split the cost of an apartment that was approximately 1,000 square feet with a roommate, for which he paid $800 per month. Plaintiff notes that using this information for his damage calculation would provide a greater recovery than the damage calculation he proposed in his initial brief. (ECF No. 56 at PageID.591.) I am satisfied that Plaintiff's initial damage calculation reasonably reflects the value of the apartment and is a proper measure of damages.

Plaintiff also seeks $22,225.00 in costs to repair his Allen Organ that was damaged during storage that was necessitated by the loss of Plaintiff's job, as well as $10,466.76 in storage and moving costs flowing directly from Defendant's misconduct. (*Id.* at PageID.389–90.) The Court finds the claimed costs to repair the Allen Organ too attenuated to allow recovery. Plaintiff testified that the damage to his organ was caused by rats in the storage facility rather than directly by Defendant's actions. The Court does find that he is entitled to storage and moving costs.

Second, for the year 2021, Plaintiff seeks $31,221.00 in lost income (including wages and the value of the employer-provided apartment) that he was unable to mitigate from the loss of his job at St. Francis. (*Id.* at PageID.390.)

Third, Plaintiff seeks lost income of $26,666.68 for the period from January 1, 2023, to April 30, 2023, due to Defendant's interference and false accusations made to Plaintiff's employer, the Cathedral of Sts. Simon and Jude in Phoenix, Arizona. (*Id.* at PageID.390–91.) Plaintiff further seeks $9,333.36 in lost wages for the period of May through August 2023 based on the difference in pay between his job in Arizona and the position he obtained in Elk Rapids, Michigan. (*Id.*)

Plaintiff also seeks $5,140.22 in storage costs for his household property, as well as $1,226.98 in equipment rental costs that he incurred through 2023. (*Id.* at PageID.391.) At the hearing, Plaintiff testified that he incurred $9,716.54 in additional storage and moving expenses in March 2024 in connection with moving his household items from Phoenix, Arizona to Florida. Plaintiff alleged that he was required to wait until March 2024 to move his belongings because he lacked the means to move them prior to that time. However, these damages are too attenuated, as it appears Plaintiff had the means to move his household items by at least the time of the settlement of the parties' parents' estate in 2019. Once he gained stable employment in mid-2023, he was able to move his possessions out of storage. Therefore, the Court will discount the storage and moving costs claimed in 2023 by half and exclude the costs claimed through March 2024. While Plaintiff is entitled to moving costs, he did not distinguish between storage costs and moving costs in 2024. The Court estimates that his compensable storage and moving costs in 2023 and 2024 are $2,570.11 for storage costs, $8,431.00 for moving costs, and $1,226.98 for equipment rental, totaling $12,228.09.

Based on the evidence submitted, I recommend that the Court award Plaintiff $127,082.54 in damages for the foregoing economic loss suffered because of Defendant's breach of contract and tortious conduct.

B.  **Non-Economic Damages**

Plaintiff also seeks non-economic damages for mental or emotional injury arising out of Defendant's conduct. Under Michigan law, compensatory damages "include compensation for mental distress and anguish." *Veselenak v. Smith*, 414 Mich. 567, 574 (1982). Mental distress and anguish include shame, mortification, mental pain and anxiety, annoyance, discomfiture, and humiliation. *Id.* (citing *Beath v. Rapid R. Co.*, 119 Mich. 512, 517 (1899), and *Grenawalt v. Nyhuis*, 335 Mich. 76, 87 (1952)). Here, Plaintiff has set forth the basis for his emotional distress

damages in his declaration filed in support of his motion for default judgment. (ECF No. 47 at PageID.391–97.) Plaintiff requests a minimum of $300,000 for emotional distress damages citing, among other cases, *Armstrong v. Shirvell*, 596 F. App'x 433 (6th Cir. 2015), and *Pratt v. Brown Machine Co.*, 855 F.2d 1225 (6th Cir. 1988).

Although reasonable minds may differ on the appropriate amount of emotional distress damages, based on the evidence presented, including Plaintiff's hearing testimony, and the circumstances of this case, I recommend that the Court award Plaintiff $50,000 in mental or emotional distress damages.

### C.     Attorney Fees

Plaintiff also requests an award of attorney fees pursuant to Mich. Comp. Laws § 600.2911(7), which provides: "An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees." Pursuant to this provision, Plaintiff sought a fee award of $30,742.50 in his opening brief, as well as costs totaling $1,357.95. (*Id.* at PageID.397.) Plaintiff also requested an additional amount of $2,040 for 4.8 hours of work on his reply. (ECF No. 51 at PageID.583.) The entries for this time spent on the reply are reflected on an April 16, 2024 invoice that counsel submitted at oral argument. In his supplemental brief, Plaintiff claims that for April and May 2024, he incurred an additional $7,162.50, for total fees of $39,945.00. Plaintiff also claims fees of $3,145.00, representing 7.4 hours of work his counsel spent preparing the supplemental filing. (ECF No. 56 at PageID.598.) The April 16, 2024 invoice includes an additional 6.2 hours of work that attorney Fawaz performed in preparation for the April 23, 2024 hearing, totaling $2,635.00. A separate invoice also dated April 16, 2024, reflects a charge of $4,250.00 in fees for research and preparation for the evidentiary hearing. The

amounts for these two invoices total $6,885.00, which is $277.50 less than the $7,162.50 that Plaintiff claims in his supplemental brief. Nonetheless, because it is reasonable to assume that counsel billed Plaintiff at least an hour to attend the hearing, I will include the difference in the fees claimed. Thus, including the preparation of supplemental briefing, Plaintiff seeks total fees of $43,090.00.

At the evidentiary hearing, I raised the issue that, because damages under Mich. Comp. Laws § 600.2911(7) are limited to economic damages, Plaintiff could not recover attorney fees for work related to non-economic damages. Having reviewed his invoices, counsel indicates that $3,055 is properly excluded for legal research pertaining to non-economic damages and that $1,742.50 is properly excluded from the time devoted to preparation of the non-economic damages portion of Plaintiff's declaration and motion for default judgment. Based on my review of the invoices, I find these reductions appropriate to account for work performed on non-economic damages.

Based on the foregoing reductions, Plaintiff requests a total fee of $38.292.50. As for the hourly rate, I conclude that the rates billed for Mr. Fawaz's and his associates' work in this case are in line with rates reported in the State Bar of Michigan 2024 Economics of Law Survey Results for large law firm practice, equity partners and associates, and years in practice. *See* https://www.michbar.org/opinions/content#econsurvey. In addition, I find the total number of hours that Plaintiff's counsel spent on prosecuting this action to be reasonable. *See Smith v. Khouri*, 481 Mich. 519, 530–31 (2008) (holding that in awarding fees authorized by statute, a court should begin by considering "the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work," as well as the reasonableness of the hours expended by each attorney).

As for costs, Plaintiff initially sought $1,357.95 but subsequently increased that amount to $2,144.55. My review of the invoices from July 2023 through February 2024 indicates that Plaintiff was actually billed $1,258.35 for costs during that period ($501.60, $55.95, $5.40, $695.40). In addition, Plaintiff was billed $786.00 for legal research on the April 16, 2024 invoice, for a total of $2044.35 in costs. Because $1,481.40 of the amount was for Westlaw research, some reduction is necessary to exclude charges for research relating to non-economic damages. Given Plaintiff's failure to address this issue, I find it appropriate to exclude the $696.40 charge as related to research for non-economic damages.

Accordingly, I recommend that the Court award Plaintiff attorney fees in the amount of $38,292.50 and costs in the amount of $1,348.95.

D.   **Pre- and Post-Judgment Interest**

In a diversity action such as this, pre-judgment interest is governed by state law while post-judgment interest is governed by federal law. *See Estate of Riddle ex rel. Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000)). Plaintiff contends that Mich. Comp. Laws § 600.6013 provides the applicable rate of interest for pre-judgment interest in this action, being 4.743% for the period of June 23, 2023–June 30, 2023; 4.762% for the period of July 1, 2023–December 31, 2023; and 5.392% for the period of January 1, 2024–June 30, 2024. (ECF No. 56 at PageID.599.) I find that Plaintiff is entitled to prejudgment interest at the rates set forth for these periods. In addition, post-judgment interest will accrue in accordance with 28 U.S.C. § 1961.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Plaintiff's motion for default judgment and enter judgment for Plaintiff in the amount of $216,723.99, plus pre- and post-judgment interest as set forth above.

Dated: June 7, 2024　　　　　　　　　　　　　　　　　　/s/ Sally J. Berens
　　　　　　　　　　　　　　　　　　　　　　　　　　　SALLY J. BERENS
　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

### NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).